Proceeding. Good morning, Your Honor. Peter Winkler for the appellant. I would ask to reserve a few moments of my time for rebuttal and questions. Okay. Watch the clock. Well, Your Honor, it's tempting to argue the merits of the underlying case. The trial at the bankruptcy court was to be bifurcated, first to decide whether there was a partnership, and second to determine damages. And it's tempting to argue the merits, and that's been done in the briefing. But what's really important here is that the trial court, after hearing four motions for summary judgment or dismissal, all those denied, and after hearing the motion for compromise, which is at issue here, said very plainly, I cannot decide the question of whether there was a partnership. That leaves that question for trial. It can't be decided on the record as it exists, because the judge who had the best knowledge of that, who had heard the parties, who had seen all the evidence that was presented to date, said, I can't make that determination. So now we have the compromise, which was approved, and we have the motion by the trustee, which is, as the court, trial court said, very thin. It doesn't contain the information required to enable the court to apply the four factors and ANC properties. So then the next step, that the judge says, well, I'm going to go ahead and not second-guess the decision of the trustee. And the judge says, I respect the trustee's business judgment. That's not what ANC properties requires the judge to do. Did the judge actually use those words, I'm not going to second-guess the trustee? Yes, Your Honor. It's in the volume two of the record at page 817 is a quotation. There is a significant possibility that at trial the trustee would lose and get absolutely zero, and so I cannot second-guess that decision. That's the judge's job, Your Honor. Then the case was reviewed. But the judge who made that statement had reviewed the papers, had he not? Pardon? I'm sorry? The judge who made that statement had reviewed the papers and the summary judgment motions and all of that. So that was Judge Ehart who made that statement? Yes, Your Honor. Okay. And he was going to resolve the partnership issue in the one that isn't before us, but that was the one to, that was in the bifurcated proceeding. He would have been the decision-maker on that? Yes, Your Honor. Okay, so as I read it, I understood the judge saying, I can't say that there's a clear outcome here, definitive outcome anyway. It isn't presented for decision, but looking at the, in light of that, so isn't he presented with a situation where the trustee has to make a judgment on litigation risk? And litigation risk is that if you litigate and lose, you come up with zero? Absolutely true, Your Honor. So what is, the ANC factors, I agree they weren't elaborated on, okay, but it does seem to be a case where you have a client, normal client judgment, cost-benefit analysis in litigation situation, you can take a certain amount of money now, which is a big discount, no doubt about it, over the value of the property, or you can proceed to go ahead and test the proposition that you actually have an equity claim here to the assets, but lose and then wind up with zero. And the trustee then winds up telling the creditor, sorry, we had a big payoff if we'd won, but we've got a zero payoff if we lose. Now, what's wrong with the way that got weighed out by the bankruptcy court and the trustee? In an ordinary case, when there's a settlement discussion, risk is often what drives the settlement. Yeah, huge. Uncertainty, huge. In the bankruptcy court, it's a little different because there is a particular mandate for the bankruptcy court to maximize the return, well, first off, to pay the trustee, pay the trustee's attorney, to pay the expenses of the bankruptcy, and then to return the maximum amount possible to the creditors and then to the debtor itself. This is a surplus estate. And that's why the ANC case states a standard which is different than really what would apply in another civil case, where you just come in and it's a little horse trading on settlement. What the ANC case requires is a discussion of the evaluation and a determination, factor one, of the probability of success in litigation. Now, what Judge Ahart referred to was the possibility of losing. That was his word. Again, same quotation. I mean, isn't that splitting hairs? We all know what he was thinking, what he was talking about. He knew the facts and circumstances of this case. Is it your position that he did not consider the ANC factors? Our position is that he not only didn't consider the ANC factors, there's no mention of the other three at all. The closest he comes to considering the ANC factors is referring to a possibility of losing. Possibility is a pretty open term. I don't believe that's at all splitting hairs when the case is very clear about evaluating the probability. The other factors were not mentioned at all, completely ignored. And, in fact, there's no discussion about how much would go to the creditors. There is a sort of a spontaneous rejection of the largest creditor's claim by the trustee in proposing the settlement. Don't the other factors off the ANC list flow from probability of success? In other words, in a hypothetical case, if a bankruptcy trial judge concludes that there is zero chance of success on the merits, zero probability of success, doesn't as a practical matter, doesn't that make the other factors irrelevant? If there's no probability of success, what does it matter, for example, the person's ability to pay if there were to be a judgment? Well, under that hypothetical, certainly. I mean, if there's no probability that you'll succeed, then there's no risk in the case. And you're right. But certainly the judge wasn't at that point. In fact, the judge was at a far different point where he said, I simply can't decide this case. And under the ANC factors, he's required to go ahead and evaluate the probability. What if he said there was a 10 percent probability of success? Then it would have been okay? We would expect that the judge would articulate and provide a basis for that so that we, in considering whether or not to challenge that at a higher court, would at least have some basis for doing so. But at least he would have taken the first step towards completing the evaluation required by ANC properties. Okay. But let's suppose, following what Judge Hawkins said, he said, okay, I see there's a 10 percent probability of success, and that's all he says. And then we come up and you say, well, this 10 percent evaluation, you know, it's within the ballpark. But he didn't talk about collectability. So is that reversible error because he didn't talk about collectability? I'm just trying to understand if they are standalone factors or is this checklist that you think that the bankruptcy court has to go through so we can review all of the aspects. Because the logic of it is that if you have a low probability of success, it doesn't really make a whole lot of difference in the end game about whether you can collect it because it's still whether you have anything to collect on. And that seemed to be what was driving the bankruptcy court here. But again, the court is reading between the lines here. Well, I agree. We're having to. And that's the problem. And that's the problem with the case, and maybe that takes me to my third point, which is what we have here is an application of responsibility. We have the court deferring to the trustee without a record on which to make its evaluation. The court says I reviewed everything, the pleadings, the whole schmear. This is an unusual case because I'm familiar with it more than I usually am in these cases. And then the next line says, and I can't make a decision. I cannot decide this based on the record before me. Well, how could he? I mean, he wasn't in trial. That's the question I have about that. He was saying, I can't decide. I can't decide definitively that there is success here. That's how I read him saying, I can't decide that you guys are going to prevail. But he doesn't say that. And that's the reason why ANC spells out the requirements, is so that there is a record to review. And that's the problem here, is that neither the bankruptcy appellate panel nor this court has a record to review without going back and trying to look through the record and see what the trial judge couldn't see. That is to say. So what do you want us to do? What are you asking us to do? Send it back and say, consider the AC factors and tick them off, 1, 2, 3, 4, 5, 6, 7? No. That's, interestingly enough, my last point, is it has to be sent back for trial. Because if this motion is. . . You mean it can't be sent back for reconsideration of the compromise? No. Because the Court has already stated the record will not permit me to make a determination. The Court doesn't have enough information before it. That's what the Court said. So the Court's choices would be to hold a trial or somehow to enhance the record so there is sufficient information for the judge to allow him to make the determination of the probability of success, which is a factor that needs to be made. So what you're saying is that the case has to be litigated on the merits of the equity claim before there can be a compromise? In this instance, yes. I'm certainly not. If it goes to trial and there's no partnership, then the creditors will, in fact, wind up with zero. And that's the end of the case. Less than zero. And the trustee has nothing. Correct. So that's it. Because you can't. . . You have to litigate the high-risk, the medium-risk claim to anything at all. And if you lose on that as trustee, you're out of luck. The $600,000 goes goodbye. The $600,000 goes goodbye. But if you look on the other side of this, this is a multimillion-dollar piece of property. This is a surplus estate. And there's a manifest injustice here where the core of this case is a bankruptcy that's caused by the creditors who did work on the property where the debtor receives no benefit of the property, but it has all the debts. It's a manifest injustice. So if that's actually what we look at when we look at how to decide cases, the right and wrong of it all, that's what this comes down to. But, again, we hang our hat. We don't walk in here talking about justice and injustice. But it is. It is important. There's a manifest injustice. If there is money there on this surplus estate that's reachable by the creditors, right? Well, on the record, the creditors' claims, I believe, were several million dollars. I don't recall the number. So what happens to the creditors if, in fact, Rubin owns the property? Most of the creditors are in the same position in that scenario as they are under the compromise, because the compromise leaves out most of the creditors. It's a small number against the amount of the claims. I believe it's 7 percent is the number that's in our brief of the claims which are paid through this compromise. The compromise is inadequate on its face, given the size of the claims and given the size of the asset here that the estate is entitled to. And what's the $2 million sum on claims, the Fischel claims? I believe that's the number, yes. Okay. That's an unliquidated claim for personal injury or something? Right. Yeah. All right. Okay. Thank you, Your Honor. Essentially, the only issue in this case is whether the court abused its discretion in approving the settlement. Besides the actual motion to approve the settlement, the court did consider the entire record in the case, which did include trial declarations. It included trial briefs. It included all of the exhibits that were submitted with the trial declarations. So in essence, unlike most cases, the trial court judge had everything in front of him. Don't our — doesn't our case law say that consideration of the four factors is mandatory? Yes. And I think that the court did consider all of those factors, even though he didn't specifically address each of them in his ruling. You know, one of the reasons appellate courts establish mandatory rules is so that the workflow moves smoothly and the dig-out work, the hard work, the detailed work is done at the most appropriate level. Appellate courts are not great finders of fact. When a judge doesn't go through the factors and list them, that means we have to dig in the record to determine if they're there. And it's as if we take a wink and a blink towards mandatory. If this district — if this bankruptcy judge had done that in this case, listed the factors, said why they were met, it would be a much different case. Well, the judge certainly did address the issue of probability of success on the merits. But not the other three factors. He did not address specifically. He left that for the BAP and for us to dig out, in effect. But I don't think on the record before the court that a finding can be made that he abused his discretion by not specifically addressing the other factors. And, in fact, the other factors also mitigate in favor of the settlement. The only one that is not probably present in this case is collectability. I guess my question is, what part of mandatory did this judge not understand? I think he did understand mandatory, and I think that he did consider all of the factors. He just did not specifically articulate them in arriving at his ruling. Well, he considered, A, the probability of success, B, the complexity of the litigation, including but not limited to the administrative costs involved in pursuing the litigation, the attendant delay in closing the bankruptcy cases, and C, the best interests of creditors of the estate. That's what he considered. And the only other issue is collectability. And I don't think that there's an issue as to whether the judgment was collectible in this case. But all of the three factors that you just articulate mitigate in favor of approving the settlement. I guess the practice pointer here is when somebody has to consider the AC factors, one of the lawyers might say to the judge, You know, Your Honor, if you'll indulge me, if there could be a specific finding on each one of these AC factors, it might make it easier for the evil Ninth Circuit to figure this whole thing out. Well, I would agree, Your Honor, that it probably would have been better for all the parties if the judge had done so. And the parties usually have to be in a position to make that happen sometimes. Yes. I agree with that, Your Honor. And even the BAP said, you know, well, we think he considered these factors because if you look at the entire record, that's what appears. He didn't tick them all off, though. He did not tick them all off. But on the record before the court, counsel had addressed the issue of claims. The actual claims in the case, the total claims were $171,000 plus the claim of Barbara Fischel, which was filed at $4.1 million, which was the personal injury claim. But that claim had been objected to. And the objection was overruled without prejudice, pending a determination by the state court as to what the actual damages were. In fact, the state court did ultimately reduce that claim to $277,000. And there was an amended claim filed after this appeal was commenced that reduced the claim amount. So, in fact, that factored best interests of creditors was met. And what the judge had before him on those issues was the claims docket showing the $171,000 plus the objection to the Barbara Fischel claim that the trustee contended was overstated. So, certainly, he considered those factors. At the time, the state court did not reduce the judgment to? The state court had not reduced the judgment, but the trustee had filed an objection to that claim. And the court ruling on the objection was, I'm going to defer determination of the trustee's objection pending completion of the state court litigation. So all of the creditors then can be satisfied out of the $600,000, even Fischel or Fischel? Depending on what the actual administrative costs are, it will probably be close. There's a contingency fee that goes to the trustee's trial counsel, which is, I believe, a 40% contingency. So that number will come off the $600,000, and then the balance will be used to pay the trustee's fees, trustee's counsel's fees, and then the rest will be distributed to creditors. And I think the judge had all of that information before him at the time he made his ruling, even though he did not specifically articulate that he was determining that the settlement was in the best interest. The counsel has argued that the judge simply said, I can't decide this, and we have no, I posit, at a 10% probability of success. What in Judge Ahart's analysis tells us, absent his ability to make a binding or conclusive determination on probability or the ultimate outcome, how do we know he wasn't talking about, well, there's a 10% probability you might not get it, but it's a 90% probability of success versus the other extreme or somewhere in the middle? The way Judge Ahart conducted this particular trial was primarily by submission of all of the direct testimony by way of declaration. So the only thing that would have occurred at trial is the witnesses that had submitted declarations would have been put on the stand for cross-examination. For credibility. For credibility. And there have been questions of what was relevant. And that was the big issue that the trustee had. Right. But that doesn't answer, that I understand. My question is, what did he say to indicate whether he considered the likelihood of success to be favorable or unfavorable to the trustee? Well, the fact that he said after reviewing all of the evidence that he could not yet decide. Well, that may be true. He may be waiting for credibility. But, you know, we don't know whether there's a high risk of loss or a low risk of loss. Because there's a hell of a discount on the value of this property from $600 to what the property value is. Wasn't there a $5 million offer on the property? The issue was not the value of the property. The issue was whether the estate had any interest. I know. I know. And so if you win on your interest, you've got a $5 million asset. Maybe yes, maybe no. There was the second part of the trial that would have occurred after the partnership issue was decided, which was an accounting. And this debtor had not put any money into the property. So there was a whole issue about, even if the property was sold, whether Gerald Rubin would have gotten most of the proceeds, 90, 80 percent of the proceeds. Who's Mr. Schock? I don't. Well, Mr. ---- I don't know who Mr. Schock is. Well, it says Mr. Schock. He's talking about the case. You don't know? I do not know who Mr. Schock is. Oh, Mr. Schock was one of the attorneys for the Redwood Trust. He's the one who says there are no collection issues. He was the attorney for who? He was the attorney for the Redwood Trust, which is the general partner of the LSC. And we don't dispute that there probably was not an issue with respect to collectability of any monetary judgment from Mr. Rubin. But there was an issue as to how much the estate would get, even if there was a ---- even if the Court determined that there was a partnership, because then we would have had a whole second phase of the trial concerning the accounting of the interest of each of the partners. So then you're talking about additional expense, additional time, additional briefing, additional delay. So based on that, I think that the Court did consider whether the trustee was reasonable or not. And unless the Court has any questions, I have nothing further. No. Thank you. I'll give you a minute for rebuttal. Wait until you get up. Thank you. The last thing counsel said is, I think the Court did consider. And that's telling. And that's the whole problem we have here, is that you, the justices, are supposed to know that the Court considered and know exactly how it considered. And that's what ANC requires. That's what you ask counsel about, is there's supposed to be a clear record of the trial court's consideration of the ANC factors. That's missing. That's error. That's an abuse of discretion. What's the status of the $4 million claim? Is that down to $277,000? I don't know. It's not in the record. And as you know, I substituted it last week. I read the record. So that's my sum of knowledge is trying to read 5,000 pages of records. I don't know what the status is. But, again, it's not — it wasn't before the trial court. And if that's — if there's a change, then upon remand, maybe the Court can reconsider that. The other point is, counsel raised the question of, if there is a favorable determination, if there is a partnership, and then we go into an accounting phase, a question about whether or not the debtor actually put anything, any money into this, it's clearly in the record that the debtor had an option on the property, had done development work on the property. It's opportunity and financing, a very common marriage in the business world. The debtor had opportunity. Mr. Rubin brought financing. The marriage was very successful. Mr. Rubin wants to keep all the fruits for himself. Thank you, Your Honor. Okay. Thank you. The case argued is submitted. The next case on calendar is Wheaton v. Kernan. How come in baseball nobody leaves after an inning is over? It must not be that much fun. Especially if we're talking Carmack and Costco and Cogsworth. Or bankruptcy. Counsel, you may proceed.
judges: Trott, Hawkins, Fisher